### James McElroy v. Menzo Swart and James M. Neasmith.

*Bill to reach moneys held by the State.*

A bill in equity will not lie to reach money received by the proper State officers in settlement of a trespass on public lands, even though complainant claims that the settlement was procured by false representations as to the extent of the trespass and by threats of imprisonment.

Appeal from Alpena. (Emerick, J.)  April 22.—Sept. 29.

BILL to compel officials to surrender notes. Complainant appeals. Affirmed.

*Turnbull, Shields & Dafoe* for complainant.

*Kelly & Clayberg, Marsden C. Burch* and Attorneys General *Otto Kirchner, Jacob J. Van Riper* and *Moses Taggart* for defendants.

SHERWOOD, J.  The complainant in this case was a lumberman, residing in the county of Alpena.  In the winter of 1877–78 he was carrying on the business at Alpena and vicinity, and owned the timber on 320 acres of pine land which adjoined timber lands belonging to the State.  During the winter the complainant cut and put afloat from his timber a large quantity of logs, intending to cut all from his own land.  On an examination and survey thereafter made, after the timber had been taken off by the complainant, it was ascertained that a portion had been cut and taken by the complainant's men from the lands belonging to the State, which, when ascertained, the State, by its agent (the defendant Menzo Swart), proceeded to adjust and settle with the complainant.

The bill alleges that complainant cut from what was called the "Carter Lands," 161,700 feet, besides what he took from his own timber, and that he had the right to take the timber he did from the Carter lands; that John S. Minor furnished him with supplies while he was doing the lumber-

ing, and purchased from complainant all his logs, and that he furnished them to Minor in the boom at the city of Alpena; that after the logs had been driven and placed in the boom, in the spring of 1878, defendant Swart called upon him, represented himself as State Trespass Agent, with full power to settle trespasses; that he found complainant had cut and taken large quantities of logs from State lands, and, from his examination and personal knowledge, complainant had trespassed over 1,100,000 feet; that he, Swart, would settle for two dollars per thousand feet, and that unless complainant settled, he would be immediately arrested, fined and imprisoned; that he believed and relied upon Swart's statements, and settled, paying Swart $123.15 in cash for the expenses of examination, and $2100 in two promissory notes, running from Minor to Partridge, State Land Commissioner, for $1050 each, to fall due at different dates; that Swart took said notes, and turned them over to Partridge; that at the time he settled he believed he had made a mistake and cut on the wrong descriptions, but having since caused a careful survey and examination of the lands he finds that the amount of timber on the lands of the State and the Carter lands both, taken by complainant, amounted to only 441,605 feet, so that he had really, in round numbers, taken from the State but 287,000 feet; that, in respect to the amount taken by him as claimed by Swart, said Swart's representations were false, and he, Swart, knew them to be false; that Partridge threatened to transfer the notes to bona fide holders; and he prays that the court will relieve him by enjoining the collection of the notes, and order them to be delivered up for cancellation, or will take an account of the actual amount of the trespass, and have the excess above the amount of said trespass credited to him on the note, and he offers to give bond to pay the amount of the trespass according to the agreement on settlement.

To this defendant Partridge answered, claiming the benefit of a demurrer, stating that he was State Land Commissioner; that defendant Swart was State Trespass Agent, and was legally authorized to settle the trespass; that he received the two

notes in his official capacity, and turned them over to the State Treasurer; that he had not since had custody of or control over them; charged, on information and belief, that the lands were State property, and the timber cut also State property ; and that the notes were given in full settlement of the trespass.

Defendant Swart also answered that he was properly appointed State Trespass Agent, citing the act under which he was so appointed ; that at the time mentioned by the complainant he was in the active discharge of his duties, and had full authority to settle the trespass ; that in May, 1878, he called on complainant, and stated to him that he was reliably informed and believed that complainant had trespassed to the amount of about 1,100,000 feet, according to the best information he could get; that complainant made some objection to the amount, and that he told him that he had better take steps to inform himself, and consult his attorney, and meet him at some future time, that the next day complainant called on him, and told him he was ready to settle, and took him to Minor's office, and had Minor execute and deliver to him the notes, and took a receipt from him, made out by Minor's book-keeper; that complainant seemed to act on Minor's advice ; that on information he believes complainant's estimate of the trespass to be untrue; denies that complainant acted on his representations in the settlement of the trespass; denies any knowledge of the Carter State Road reservation ; asserts that it is irrelevant and immaterial, and claims the benefit of a demurrer.

A temporary injunction was issued on filing the bill and affidavits attached. Proofs were taken on both sides in the case, which was heard on pleadings and proofs in the Alpena circuit and a decree entered dismissing the complainant's bill on the 11th day of February, 1881. Complainant appeals.

The fact that a trespass was committed, and a considerable amount of timber taken from the lands of the State by the complainant, plainly appears, and no question is made but that a settlement might lawfully be made for the same with

the State; neither is the power of defendant Swart to make such settlement in behalf of the State disputed.

The vital questions in the case upon the merits are, Was a settlement made, and if so, What were its terms? Both parties swear a settlement was made, and they agree that the notes in question and the expense money in making the settlement were given at the time; but the consideration for the notes is a disputed question between the parties. It is claimed by the complainant that the consideration of the notes was that he had by mistake cut and taken away from the lands of the State 1,100,000 feet of timber, for which he agreed in settlement to pay to the State two dollars per thousand; that he did not know the amount taken, or that any had been taken, until informed by the State Agent, Mr. Swart, who told him he had examined and estimated it; and that he relied upon the assurance of Swart that there was that quantity taken in giving the notes and was deceived by Swart. Mr. Swart, on the contrary, denies that the settlement was made on the basis of two dollars per thousand, and says that, while he admits that he told the complainant that 1,100,000 feet had been taken from the land of the State, he told him he would take the $2100 and $123.15, and settle the trespass and for the timber, and upon these terms alone was the settlement made, the money paid, and the notes given. After the notes were given, the complainant caused a survey of the land to be made, and a careful examination and estimate of the actual amount of timber cut and taken away from the lands claimed by the State, and found the same to be 441,605 feet, and of this amount 161,700 feet came from the Carter lands.

After a careful examination of all the testimony, I cannot avoid the conclusion that McElroy's version of the contract of settlement is supported by a preponderance of the evidence which ought to govern in the case, and that the amount of timber found to have been taken under the examination and estimates he caused to be made was correct; that the damages to the State for the trespass and timber taken were

to be settled and satisfied by the payment of two dollars per thousand for the amount actually taken.

It is claimed by counsel that as soon as the contract had been arranged and completed, it being one the State could lawfully make with the complainant, the parties stood upon their contract relations ; the complainant having received the full consideration for his part, it only remained for him to make the payment promised to complete fulfillment, and this, I think, was the true status of the parties.   As soon as the agreement was made and became binding upon the respective parties, the element of wrong became eliminated ; and if any mistake had been made or fraud committed in securing the contract for the payment of the amount stated in the notes, it should, in some manner, have been corrected. There is no doubt in my mind but that the amount of timber taken from the State land by complainant was greatly mis- represented by the State Agent, whether with knowledge of the facts or otherwise is immaterial, so long as the misrepre- sentation entered into the consideration of the notes,and their procurement was secured under a threat of prosecution and imprisonment.   Under the testimony in the case the com- plainant should have relief somewhere.   There was in the case a clearly false representation of an important fact, and one which the complainant knew nothing about.

Two elements entered into the complainant's settlement and the consideration for the notes ; one was the injury done by the trespass, and the other was the value of timber wrong- fully taken.   Both were adjusted in the arrangement, and the amount to be paid by complainant was two dollars per thousand feet.   This amount of timber was unknown at the time to the complainant, and if known at the time to Swart, and not correctly given to the complainant, and he acted thereon in making payment, simple justice requires that a correction should be made ; but the difficulty in the complain- ant's case is, this is not the place for him to obtain his relief. The State is substantially the defendant.   If we could grant the prayer of the bill, it would be wholly inadequate to relieve the complainant.   The notes taken are substantially

under the control of the Treasurer of the State, and we can not, in a proceeding of this kind, enforce specific performance of the complainant's contract made with the Commissioner of the State Land-office.

The complainant's remedy must come, if at all, in some other form. The decree dismissing the complainant's bill was therefore right, and must be

Affirmed without costs.

CAMPBELL, J. I concur in the result, as I do not think any bill could lie to reach funds of the State in the hands of the proper officers.

COOLEY, C. J. concurred.