THE ATTORNEY GENERAL, EX REL WALTER CRANE, v. FERDINAND AMOS.

*Constitutional law—Title to statutes—Object to be expressed therein—Amendatory act—If of section having but one object, title sufficient if it purports to amend such section—When object stated in title is to amend sections of an existing act, and the amendments relate to such object and are germane to the general object of the act, the title is sufficiently explicit—Later statute—Repeals inconsistent provisions of existing law and those covered by subsequent act—Legislature—Pending bill may be perfected by a substitute, introduced after the expiration of the legislative fifty days, if purpose is the same as that of original bill—Act 398, local acts of 1885—Validity of sections 9 and 10—If invalid, remainder of act not affected by such invalidity.*

1. Where a section of an act of the legislature providing a charter for a city is confined *solely* to prescribing its territorial boundaries, an amendatory act entitled "an act to amend said section," etc., but not more particularly specifying its *object*, which was to *alter* such boundaries, is not repugnant to Sec. 20, Art. 4 of the constitution. Such title necessarily imports that the boundaries of the municipality are to be changed by the amendment, and such object is sufficiently expressed in the title of the amendatory act. (See note.)·

2. Where the *object* stated in the title to an act of the legislature is to amend certain sections of an existing act, and to add new sections thereto, and the provisions of the amendatory sections relate to such object, and are germane to the *general* object of the act, and appropriate to effectuate the same,—such act is not in conflict with Sec. 20 of Art. 4 of the constitution. (See note.)

NOTE.—For a full discussion of this section, see *Attorney General v. Weimer*, 59 Mich. 580; *Callaghan v. Chipman*, Id. 610; *People v. Beadle,* 60 Id. 22

3. An existing law, in so far as its provisions are inconsistent with or covered by a subsequent act of the legislature on the same subject, is repealed by the later act. *People v. Bussell*, 59 Mich. 104.

4. The introduction of a substitute for a pending bill *after* the expiration of the fifty days limited by Sec. 28, Art. 4 of the constitution for the introduction of new bills, is not in conflict with such constitutional provision, if the provisions of the substitute are in harmony with the *objects and purposes* of the original bill as expressed in its title.

5. A pending bill may be perfected in any manner consistent with the *original object* as expressed in the title, by amendment, or by a substitute therefor if the substitute is for the same *purpose* as the original bill, and not for another or different purpose.

6. Whether sections 9 and 10 of Act 398 of the Local Acts of 1885, amending the Detroit City Charter, are valid, the court declined to decide, the question not being necessarily raised by the record; but if invalid, they do not impair the validity of the remaining portion of the act, which is capable of enforcement if these *sections* were stricken out.

Information to test the right of the respondent to hold the office of Alderman.

Heard February 16, 1886.    Decided April 8, 1886.

*Albert P. Jacobs* and *H. A. Chaney*, for relator.

*Henry M. Duffield, William S. Sheeran*, and *F. A. Baker*, for respondent.

CHAMPLIN, J.    The attorney general has filed an information in the nature of a *quo warranto* against Ferdinand Amos, in which he alleges that the respondent usurps, intrudes into, and claims to exercise, a false, fictitious, and pretended office, known as the office of alderman of the Sixteenth ward of the city of Detroit.

The respondent pleads that the Sixteenth ward of the city of Detroit is ordained and established by virtue of two acts of the Legislature of the State of Michigan, known as acts numbered 358 and 398 of the Local Acts of the Session of 1885.    To this plea the attorney general demurs, for the rea-

son that the above-mentioned acts are repugnant to the constitution of the State, and altogether null and void.

No particular provision of the constitution is pointed out in the demurrer which is violated by the legislation relied upon; but in the brief of counsel, and upon the argument before us, it is urged that act No. 358, approved May 26, 1885, is invalid because its object is not expressed in its title.

This act was entitled "An act to amend sections three, four, and five of chapter one of an act entitled 'An act to provide a charter for the city of Detroit, and to repeal all acts, and parts of acts, in conflict therewith,' being act No. 326 of the Session Laws of 1883, approved June 7, 1883, and to add three new sections to said chapter, to be known as sections six, seven, and eight." Sections 3, 4, and 5 of act No. 326 prescribe the territorial limits of the city; the division of the territory into wards; the division of the wards into election districts by the common council; the registration of electors; and the appointment of inspectors and other officers of elections.

The three sections, as amended, also prescribe the territorial boundaries, which were enlarged by the amendment; the division of the territory into wards, creating three additional ones denominated the Fourteenth, Fifteenth, and Sixteenth; and provides for the division of the wards into election districts by the common council, etc.

In the amended act section 6 reads thus:

"Each of said wards Fourteen and Fifteen shall be entitled to two aldermen, and the first election for such aldermen shall be held at the annual city charter election. One of said aldermen for each ward shall be elected for one year, and the other for two years, the time of service for which said aldermen are elected to be designated on the ballots cast for them; and thereafter aldermen shall be elected for said wards in all respects as now provided for the existing wards of said city. Other ward officers, such as are now provided for existing wards, shall be elected at said election for said new wards, whose terms of office, duties, and powers shall be the same as those of like officers in the existing wards."

Section 7 provides for the registration of voters, and for the holding of an election in the new wards. Section 8 provides:

" This act shall not interfere with or affect the assessment, levy, or collection of any taxes assessed or levied during the present year, on any of the lands hereby detached from the townships of Hamtramck, Greenfield, or Springwells; but such taxes shall be assessed and collected in the respective townships to which such lands heretofore belonged, in all respects as if this act had not been passed; and said lands shall not be subject to taxation in the city of Detroit until the year of our Lord, 1886; provided, however, that all said lands shall, after this act takes effect, be subject to local assessments for the grading and paving of streets, or for the building of sidewalks, drains, or sewers, in the same manner as the other territory of said city."

The first object which it is claimed is embraced in the act, and not expressed in its title, is the enlargement of the territorial limits of the city. This Court, as well as all persons interested, will take notice that section 3 of chapter 1 of Act No. 326 of the Local Laws of 1883 particularly defined the boundaries of the city of Detroit, and embraced no other object. The title, therefore, of an act which is stated to be an amendment of such section necessarily imports that the boundaries of the municipality are to be changed by the amendment, and hence the object; that is, the alteration of the boundaries is sufficiently expressed in the title, which states that the act is to amend the section prescribing the boundaries of the city. The attention of the citizen is, by this title, directly called to the object sought to be attained by the enactment; and he is thereby apprised that the Legislature intends either to enlarge or diminish the territorial boundaries of the city.

In the case of *People v. Briggs*, 50 N. Y. 553, an information in the nature of a *quo warranto* was filed to try the title of respondents to the office of commissioners of public works of the city of Rochester, and was based solely upon the objection that the legislation under which respondents held office was in violation of the constitution of that state,

which provided: "No private or local bill which may be passed shall embrace more than one object, and that shall be expressed in the title." The title of the act was, "An act to amend the several acts in relation to the city of Rochester." The legislation under this title seemed to embrace nearly every subject of municipal control or regulation, and brought under one law several preceding and independent acts relating to the city. Church, C. J. in deciding the case, said:

"The provision of the constitution invoked in this case was adopted to check and prevent certain evils of legislation, and should be enforced by courts whenever it has been substantially violated. Its object was twofold—*First*, to prevent a combination of measures in local bills, and secure their passage by a union of interests commonly known as 'log-rolling;' *second*, to require an announcement of the subject of every such bill, to prevent the fraudulent insertion of provisions upon subjects foreign to that indicated in the title. It was intended that every local subject should stand upon its own merits, and that the title of each bill should indicate the subject of its provisions, so that neither legislators nor the public would be misled or deceived.   *   *   *
Laws relating to any specified municipal corporation are those which create the body, or define or regulate its powers, and prescribe the mode of their exercise, and, taken together, constitute, in a practical sense, its charter. An act, therefore, in relation to the city of Rochester, whether the word 'corporation' is used or not, is an act which may affect any or all of the corporate powers of the city.   *   *   *   Such a title expresses a subject comprehensive enough to embrace all the details of a city charter.   *   *   *   It seems to me very clear that a subject is expressed in this title, which is the government or charter or corporation of the city of Rochester, and hence the bill may embrace all the details of a city government. It is unnecessary that a law, in order to operate as an amendment to a municipal corporation, should specify that it is an amendment to the charter, or any existing act. It is sufficient if its provisions affect the corporation in its governmental capacity. The sections of this act, therefore, which are not specified as amendments in the act itself are as valid and effectual as other parts of the act which are so specified."

In *Harris v. People*, 59 N. Y. 599, it was held that an act entitled "An act to revise the charter of Long Island

'City," and which contained a provision erecting a court of criminal jurisdiction, was valid, and did not conflict with the provision of the constitution of that state above cited. See, also, *Prescott v. City of Chicago,* 60 Ill. 121. In the case last cited the court said :

" The principal object of the act is to amend the charter of the city of Chicago, and, in so doing, to extend the city limits ; to establish and provide for the improvement and regulation of public parks situate in the west division of Chicago. All of these purposes are well expressed by the title, in these words : 'An act to amend the charter of the city of Chicago.' "

See, also, Dill. Mun. Corp. § 51, and note 2 to that section; Cooley Const. Lim. 155–166, *141–*150.

The act under consideration is also thought to conflict with the constitution because it embraces more than one object. We need not discuss this objection, for the reason that each provision of the amendment relates to the object stated in the title, which is to amend certain sections of the charter of the city of Detroit, and to add new sections thereto; all of which amendments were germane to the general object of the act, and appropriate to be made in order to effectuate the general object.

The objection is also made that it is invalid because it provides that the annexed territory shall be subject at the same time to assessments from two different municipalities for what are identically the same purposes. This objection refers to section 8 of the act, relating to local assessments. We do not see that this section is open to the objection made. It does not appear that any taxes or assessments were, at the time the act took effect, levied or collected for grading or paving of streets, building sidewalks, drains, or sewers ; and, if not, there could not be any conflict between the municipal authorities, or any double taxation.

But it is further claimed that this act No. 358 is superseded and rendered invalid by the subsequent act, entitled "An act to amend sections three, four, and five of chapter one of an act entitled 'An act to provide a charter for the city of

Detroit, and to repeal all acts and parts of acts in conflict therewith,' being act number three hundred and twenty-six of the Session Laws of 1883, approved June 7, 1883, and to add five new sections to said chapter, to be known as sections six, seven, eight, nine, and ten," approved June 26, 1885. There can be no doubt that so far as the provisions of this act cover the same provisions of the former act, and so far as the former act is inconsistent with this act, it is repealed. The same objections are urged to this act on constitutional grounds that were to that of May 26th ; besides, two additional objections, as follows: 1. Because the bill which became act No. 398 was substantially a new bill, introduced after the first 50 days of the legislative session had expired, contrary to the constitution, art. 4, § 28.

This act differed from act No. 358 in this :   Section 3, in defining the boundaries of the city of Detroit, extended the boundaries still more than act 358.   Section 6 supplied the evident omission in section 6 of the former act relative to the election of aldermen in the Sixteenth ward.   In all other respects, sections 3, 4, 5, 6, 7, and 8 are the same as the corresponding sections of act 358. · Section 9 is as follows:

" The territory annexed to the city of Detroit by this act shall remain a part of the school-districts to which it now belongs until July 1, 1886, and school taxes shall be levied and collected therein for the year 1885.   The taxable property annexed shall be listed and assessed in making out the assessment rolls of the city of Detroit for the year 1886; and in determining the amount of school taxes to be levied in the city of Detroit for the fiscal year ending July 1, 1886, the school children in the annexed territory shall be considered, and taxes may also be levied for the construction of additional school buildings in said territory.   On the first day of July, 1886, title to all the school property, real or personal, situated in the annexed territory, shall be vested in the board of education of the city of Detroit, and the school-district officers shall turn the possession and control thereof over to said board."

Section 10 provides for a re-arrangement of the school-districts in the township, and for the apportionment and division of school property.

The legislative history of this act is as follows : On the fifteenth day of January, 1885, Representative Eagan introduced a bill entitled : "A bill to amend sections 3 and 4 of chapter 1 of an act entitled 'An act to provide a charter for the city of Detroit,' being act No. 326 of the Session Laws of 1883, approved June 7, 1883, and to add a new section to said chapter, to be known as section six, and also to detach certain portions of territory from the townships of Hamtramck, Springwells, and Greenfield, and to annex the same to the city of Detroit." The bill was read a first and second time by its title, and referred to the committee on municipal corporations. On the eleventh day of June the committee reported a substitute to the bill (file No. 431) entitled "A bill to amend chapter one of act No. 326 of the Session Laws of 1883, entitled 'An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith,' approved June 7, 1883." The adoption of the substitute was concurred in by the house, the bill was ordered printed, and referred to the committee of the whole, and placed on the general order. On the sixteenth of June the adoption of the substitute was reconsidered, and the bill was recommitted to the committee on municipal corporations, and on the same day the committee reported a substitute (file No. 434) entitled "A bill to amend sections three, four, and five of chapter one of an act entitled 'An act to provide a charter for the city of Detroit, and to repeal all acts and parts of acts in conflict therewith,' being act number three hundred and twenty-six of the Session Laws of 1883, approved June 7, 1883, and to add five new sections to said chapter, to be known as sections six, seven, eight, nine, and ten." The house concurred in the adoption of the substitute, ordered the bill printed, referred it to the committee of the whole, and placed it on the general order. On the seventeenth day of June the bill was amended and passed, title agreed to, and immediate effect given. On the same day the bill was returned from the senate with its concurrence, and the bill referred to the committee on engrossment and enrollment. On the nineteenth of June the bill

was reported, enrolled, and was approved by the lieutenant governor.

It is urged by the relator that "the changes made in the bill after the first fifty days were three-fold: (*a*) in the title; (*b*) in the territory added; (*c*) in the objects embraced in the added sections, particularly eight, nine, and ten, relating to taxation and school matters;" and it is claimed that these changes in the act were an intended evasion of the constitution, and avoid the act in question. But the bill introduced by Representative Eagan had for its object the amendment of the charter of the city of Detroit. Its title was fully as broad as that finally agreed upon as the title of the act, and there was nothing misleading in the change made in the title. The title of the bill, as originally introduced, unnecessarily stated one object being to detach certain portions of territory from the townships of Hamtramck, Springwells, and Greenfield, and annex the same to the city of Detroit, but this object, as above stated, was sufficiently expressed in the title relative to amending section 3 of the charter, which prescribed the boundaries of the city; and it was unnecessary to express in the title that such amendment would operate to attach or detach territory to or from the city. The amendment itself would determine that fact. Under the title as originally introduced, it was competent for the Legislature to change the boundaries by amendment, and to otherwise perfect the bill in any manner consistent with the original object as expressed in the title; and it is immaterial whether the method pursued was by amendment to, or by substitute for, such original bill, so long as the substitute was for the same purpose as the original bill, and not for another and different purpose. In this case the substitute appears to have been in harmony with the objects and purposes of the original bill.

It may be conceded that Act No. 358 was discovered to be defective, and not properly framed to accomplish the object sought by the Legislature, and that Act No. 398 was amended, and as finally passed was intended to remedy defects in the first act; yet it by no means follows that the

second act must be considered an evasion of the constitution because it contains some features not in the other act.

The only remaining objection to this act is that sections 9 and 10 are not germane to the title of the act, and are not expressed in its title. The objection presents some serious difficulties respecting the validity of these sections, but those sections are not necessary to support the respondent's title to the office of alderman, and we prefer not to pass upon their validity in a collateral proceeding of this kind. It was urged at the argument that if these sections were invalid, either for the reason that their object was not expressed in the title, or because the bill embraced more than one object, the whole act was invalid; for *non constat* it would have been passed without the aid of these unconstitutional provisions. An examination of the sections, however, does not show them to be of that compromising character which would lend probability to the inference that they were added as a scheme to enlist support from influences otherwise antagonistic to the scope of the bill. They appear, rather, to be intended to provide a remedy for the change in boundaries, and in bringing into the municipality outside territory and property belonging to established school-districts, concerning which it may be questionable whether the general laws upon the subject do not already amply provide. We are all agreed, however, that if invalid, they do not impair the validity of the remaining portion of the act, which is capable of enforcement if these sections were stricken out. It follows that the respondent is entitled to the office of alderman of the Sixteenth ward of the city of Detroit, and judgment must be entered accordingly.

The other Justices concurred.