(February 23, 1917.)

## E. C. DAVIS, Plaintiff, v. STATE, Defendant.

[163 Pac. 373.]

CLAIMS AGAINST THE STATE—CONSTITUTIONAL AND STATUTORY PROVI-
SIONS—JURISDICTION OF STATE BOARD OF EXAMINERS AND SUPREME
COURT — LIABILITY OF STATE FOR NEGLIGENCE OF SERVANTS OR
EMPLOYEES—CLAIMS AGAINST THE STATE AS A PROPRIETOR.

1. Sec. 109, Rev. Codes, limits the time within which a claim
against the state may be presented to the state board of examiners
to two years after the claim has accrued. After the expiration of
this period the state board of examiners is without jurisdiction to
consider the claim.

2. Under the provisions of sec. 10, art. 5, and sec. 18, art. 4,
of our constitution the method prescribed for presenting and prose-
cuting to a conclusion the claims against the state is that in the
first instance such claim must be presented in proper form to the
state board of examiners; if rejected by said board the supreme
court has original jurisdiction of an action upon a proper claim
and may in some cases give a recommendatory judgment, which in
turn must be presented to the legislature to be by it allowed or
disallowed.

3. The fact that under sec. 10, art. 5, of the constitution the
supreme court has original jurisdiction to hear claims against the
state does not relieve claimants of the obligation in the first in-
stance of presenting their claims to the state board of examiners.

4. An amendment to a complaint will not be permitted where
the complaint, even if so amended, would fail to state a cause of
action, under the general rule that amendments to pleadings should
be permitted in furtherance of justice.

5. States cannot be sued without their consent, and when by
constitutional or statutory provisions the state has permitted itself
to be sued, such permission does not render the state liable for the
careless or negligent acts of its servants, employees or agents in
the absence of any statute expressly fixing such liability upon a
state.

6. The word "claims" as used in art. 5, sec. 10, of the constitu-
tion of this state does not include any claim for damages caused
by the careless or negligent acts of the state's servants, employees
or agents, and in the absence of any statute expressly making the
state liable in such cases no such liability exists.

7. Complaint of D. alleged that the state of Idaho owned and operated an irrigation system; that by reason of the negligence and carelessness of the state and its servants, employees and agents a ditch of said system broke, causing large quantities of water to flow upon, over and across D.'s land, resulting in the alleged damage. *Held,* not to state a cause of action as against the state, and not to disclose a state of facts giving rise to a "claim" within the meaning of art. 5, sec. 10, of the constitution.

8. Under sec. 109, Rev. Codes, no claim which is not provid.' for by law may be presented, audited, set off or sued upon.

9. *Held,* that in the absence of a statute or constitutional provision making the state as a proprietor liable for the car lo·s or negligent acts of its servants, employees or agents, this court is without jurisdiction to grant any relief to plaintiff, under the facts alleged in plaintiff's complaint.

[As to the liability of a state for the torts of its officers, see note in Ann. Cas. 1913A, 1038.]

Original action brought against the state for the purpose of procuring a recommendatory judgment. The state interposed a demurrer. *Demurrer sustained.*

E. G. Davis and Paul S. Haddock, for Plaintiff, file no brief.

T. A. Walters, Atty. Genl., A. C. Hindman and J. Ward Arney, Assts., for Defendant.

An action for damages cannot be maintained against a state unless the state has, by voluntary legislative enactment, granted such consent or assumed the particular liability which is the occasion of the action. (8 L. R. A. 399, note.)

A citizen will not be permitted to bring action against the state on an alleged claim arising from the negligence, carelessness, misfeasance, malfeasance or nonfeasance of the state or its officers, except in those jurisdictions where, by reason of constitutional provisions or legislative enactment, such actions are permitted. (8 L. R. A. 399, note; 42 L. R. A. 33, note.)

PER CURIAM.—This is an action brought by the plaintiff against the state of Idaho for a recommendatory judgment

for damages alleged to have been sustained on the plaintiff's land by reason of the alleged carelessness and negligence of the defendant and its duly authorized officers and agents acting in its behalf. The facts, so far as they relate to the questions here involved, are as follows: That on May 1, 1908, the defendant, state of Idaho, entered into a contract in writing with the Kings Hill Irrigation & Power Company, Limited, under which said company agreed to construct a certain irrigation system in the counties of Owyhee and Twin Falls, in the state of Idaho, for the irrigation and reclamation of certain designated arid tracts of land, including the land of the plaintiff; that the project was one commonly called a Carey Act project; that the plaintiff was one of the settlers upon land included within the project; that he made his final proof, on his said lands, to the state of Idaho on June 19, 1912, which proof was accepted by the state board of land commissioners of the state of Idaho and final certificate No. 169 issued to plaintiff; that ever since the entry of the said land and the making of final proof the plaintiff has been the owner and in the possession thereof; that prior to the year 1914 the said Kings Hill Irrigation & Power Company, Limited, became insolvent and was foreclosed in the federal district court, for Idaho, in mortgage foreclosure proceedings; that at the sale of the said system under said proceedings the state of Idaho, on March 10, 1914, succeeded through purchase of said system to all the rights and interest of the said company in the said project, and that since said date the state has been and now is the owner of said irrigation system, and operated said system during the irrigation season of 1914; that on July 1, 1914, an irrigation ditch of said system broke and allowed large quantities of water to run on and across the plaintiff's land, doing the damage alleged; it is alleged "that on or about the 3d day of November, 1916, the plaintiff filed with the board of examiners of the state of Idaho" a claim for reimbursement of his damages, which claim was by the said board rejected and marked disallowed.

The defendant has demurred to the complaint on two grounds; first, that said complaint does not state facts suffi-

cient to constitute a cause of action; second, that the above-entitled court has no jurisdiction of the subject matter of said action as set forth in said amended complaint.

Sec. 18, art. 4, of the constitution of Idaho provides: "The Governor, Secretary of State and Attorney General . . . . shall also constitute the Board of Examiners, with power to examine all claims against the state, except salaries or compensations of officers fixed by law, and perform such other duties as may be prescribed by law. And no claim against the state, except salaries and compensation of officers fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by said board."

Sec. 109, Rev. Codes, provides: "All persons having claims against the state must exhibit the same, with the evidence in support thereof, to the Auditor, to be audited, settled and allowed by the Board of Examiners, within two years after such claim shall accrue, and not afterward. . . . . No claim which is not provided for by law shall be audited or set off."

It appears from the amended complaint that the alleged claim of plaintiff accrued on the 1st day of July, 1914, and that the same was presented to the state board of examiners on or about November 3, 1916. The legislature has seen fit, by sec. 109, Rev. Codes, to limit the time within which a claim may be presented to said board to two years after the claim has accrued. As far as the amended complaint shows, the alleged claim of plaintiff was not presented to the board until several months after the two year period had expired. It would appear that the said board was without jurisdiction to consider this alleged claim at the time it was presented.

In the case of *Pyke v. Steunenberg,* 5 Ida. 614–618, 51 Pac. 614, 615, this court said:

"The jurisdiction is conferred upon this court by the constitution (sec. 10, art. 5) to hear claims against the state, and to make decisions thereon, which decisions 'shall be merely recommendatory'; and this court has declined to hear any claims against the state until the same shall have been passed upon by the board of examiners."

It will be remembered that under the provisions of sec. 10, art. 5, this court has original jurisdiction to hear claims against the state, that its decisions are merely recommendatory, and that they shall be reported to the next session of the legislature for its action. It will also be remembered that sec. 18, art. 4, provides that no claim against the state, except salaries and compensation of officers, fixed by law, shall be passed upon by the legislature without first having been considered and acted upon by the board of examiners. (*Kroutinger v. Board of Examiners,* 8 Ida. 463, 69 Pac. 279; *Bragaw v. Gooding,* 14 Ida. 288, 94 Pac. 438; *Pyke v. Steunenberg, supra.*)

Construing these two sections together it would appear that only one method of presenting and prosecuting to a conclusion claims against the state has been provided: that in the first instance a claim must be presented in proper form to the state board of examiners, and if there rejected this court has original jurisdiction of suits upon proper claims and may in some cases give a recommendatory judgment, which in turn shall be presented to the next legislature to be allowed or disallowed. The mere fact that this court has original jurisdiction to hear claims against the state does not relieve claimants of the obligation in the first instance of presenting their claims to the state board of examiners.

So far as the amended complaint discloses, the state board of examiners was without jurisdiction to even consider the claim of plaintiff at the time it was presented on November 3, 1916. In the case of *Small v. State,* 10 Ida. 1, 76 Pac. 765, this court dismissed a petition on the ground that the claim therein set forth was barred by the statute of limitations. It is true that the court there had under consideration the provisions of sec. 4053, Revised Statutes, but sec. 109, Rev. Codes, does not appear to have been called to the attention of the court in that case. The language of sec. 109 is clear and susceptible of only one construction; that is, that in order to be audited a claim must be presented to the state board of examiners within two years. The exact language of the sec-

tion being, "within two years after such claim shall accrue, and not afterward."

From what has been said it appears that this court should decline to exercise jurisdiction or to hear or pass upon the plaintiff's alleged claim. It is true the plaintiff's original complaint, which was filed in this court on April 8, 1915, contained an allegation that plaintiff's claim had theretofore been presented to the board of examiners and that the board had failed and refused to pay the same or any portion thereof. However that may be, plaintiff's amended complaint appears to be based upon the claim which was filed and acted upon by said board long subsequent to the filing of the original complaint and, so far as the amended complaint shows, was filed as a new claim, and as has been indicated appears to be barred by the statute of limitations as set forth in sec. 109, Rev. Codes.

From what appears in the original complaint and from statements by counsel for the plaintiff at the hearing, it might be possible for the plaintiff to so amend his amended complaint as to bring it within the statute, and if we did not deem it necessary to dispose of the case upon other grounds, we would be inclined to give plaintiff an opportunity to further amend.

The demurrer on the part of the state raises two questions; first, as to whether the complaint states facts sufficient to constitute a cause of action against the state; second, as to whether this court has jurisdiction of the subject matter of the action.

Art. 5, sec. 10, of the constitution of Idaho gives this court original jurisdiction in actions upon claims against the state. Hence at the outset it becomes necessary to determine whether or not the facts presented by plaintiff's complaint constitute such a claim against the state as comes within the purview of the constitutional provision.

It has been held in a long line of authorities that a state is not liable for the carelessness or negligence of its servants, employees or agents. (See the extended notes in 8 L. R. A. 399; 42 L. R. A. 64, subd. 13; Ann. Cas. 1913E, 1038.)

The general proposition that a state cannot be sued without its consent is held by the overwhelming weight of authority; see the notes above cited; also note to *McElroy v. Swart,* 57 Mich. 500, 24 N. W. 766. The cases seem uniformly to hold not only that states cannot be sued without their consent, but further that, even when by constitutional provision or legislative enactment the state has permitted itself to be sued, the mere fact of permitting the suit against itself does not render the state liable for the careless or negligent acts of its servants, employees or agents, in the absence of any statute expressly fixing such liability upon the state.

One of the leading cases upon this point appears to be the case of *Murdock Parlor Grate Co. v. Commonwealth,* 152 Mass. 28, 24 N. E. 854, 8 L. R. A. 399. In that case the court said:

"But we do not find that demands founded on the neglect or torts of ministerial officers engaged as servants in the performance of ministerial duties which the state as a sovereign has undertaken to perform have ever been held to render it liable. Nor does this rest upon the narrow ground that there are no means by which such obligations can be enforced, but on the larger ground that no obligations arise therefrom. Municipalities, such as cities and towns, are created by the commonwealth in order that it may exercise through them, a part of its power of sovereignty. Where they are engaged in the performance of public duties imposed upon them by statute, they are not liable to private actions of tort for the negligence of their agents employed for this purpose, unless such action is provided by the statute." Citing the well-considered case of *Hill v. Boston,* 122 Mass. 344, 23 Am. Rep. 332.

In the case of *Houston v. State,* 98 Wis. 481, 74 N. W. 111, 42 L. R. A. 39, Cassoday, Chief Justice, after citing several of the leading authorities in support of the proposition that no state could be sued in any court without its express consent, said:

"Our constitution expressly provides that 'the legislature shall direct by law in what manner and in what courts suits may be brought against the state.' Wis. Const., art. 4, sec. 27. In pursuance of that provision, the legislature at an early

day provided that 'it shall be competent for any person, deeming himself aggrieved by the refusal of the legislature to allow any just claim against the state, to commence an action against the state, by filing a complaint, setting forth fully and particularly the nature of such claim, with the clerk of the supreme court, either in term time or in vacation.' Rev. Stat., sec. 3200. This section only relates to claims which, if allowed, render the state a debtor to the claimant. *Chicago, M. & St. P. Ry. Co. v. State,* 53 Wis. 509, 10 N. W. 560; *Clodfelter v. State,* 86 N. C. 51, 41 Am. Rep. 440; *State v. Hill,* 54 Ala. 67. This statute does not include a demand based upon the unlawful and tortious acts of officers or agents of the state. *Hill v. United States,* 149 U. S. 593, 13 Sup. Ct. 1011, 37 L. ed. 862.''

The court then quoted as authority for the same proposition the case of *Murdock Parlor Grate Co. v. Commonwealth, supra.* The opinion goes on to say:

''The law is well established that neither the state nor the United States is answerable in damages to an individual for an injury resulting from the alleged misconduct or negligence or tortious acts of its officers or agents. *Gibbons v. United States,* 8 Wall. (75 U. S.) 269, 19 L. ed. 453; *Langford v. United States,* 101 U. S. 341, 25 L. ed. 1010; *German Bank v. United States,* 148 U. S. 573, 13 Sup. Ct. 702, 37 L. ed. 564; *Clark v. State,* 7 Cold. (47 Tenn.) 306.''

In the last case cited it was held that the Tennessee Code, sec. 2807, providing that actions may be instituted against the state under the same rule which regulates actions against individuals, was only intended to give a remedy and did not create any liability. The force of this distinction is brought out clearly in *Green v. State,* 73 Cal. 29, 11 Pac. 602, 14 Pac. 610. In that case the plaintiffs were authorized to sue the state for damages alleged to have been suffered by them by reason of certain canal improvements made by the state, and to have judgment therefor ''if it appears upon the trial . . . . that damage has been done [to the plaintiffs] by any act for which the state is legally liable.'' The court there held, ''That the language of the act excludes the idea that any lia-

bility was admitted, or any defense waived, except that of immunity from suit," and affirmed a judgment sustaining the demurrer, which was interposed on behalf of the state, the first two grounds of which were the same as the grounds of the demurrer in the case at bar.

A more recent case is that of *Riddoch v. State,* 68 Wash. 329, Ann. Cas. 1913E, 1033, 123 Pac. 450, 42 L. R. A., N. S., 251. This was an action to recover damages for personal injuries sustained by the plaintiff by reason of the giving way of a railing of a gallery in the armory building in the city of Seattle. It appears that the building in question belonged to the state of Washington and had been leased to the Seattle Athletic Club, and that the alleged injuries were sustained during an entertainment given therein by the club.

The constitution of Washington, sec. 26 of art. 2, provides: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state."

The court, in the last-mentioned case, upon this point says:

"This provision creates no cause of action—imposes no liability, as against the state, where none would exist independently of it. It merely directs the legislature to provide a remedy for causes of action recognized at common law as against the sovereign or created by statute."

It appears that pursuant to the constitutional provision above quoted the legislature of the state of Washington, Laws of 1895, p. 188, sec. 1 (Rem. & Bal. Code, sec. 886), enacted that:

"Any person or corporation having any claim against the state of Washington shall have the right to begin an action against the state in the superior court of Thurston county."

The court in the same case says: "The word 'claim' as used in this section is synonymous with 'cause of action.' The scope of the section is the same as that of the constitutional provision. *Northwestern & Pacific Hypoteek Bank v. State,* 18 Wash. 73, 50 Pac. 586, 42 L. R. A. 33. It creates no cause of action. It provides a remedy for existing causes but imposes no new liability. It does not waive any defense. *Billings v. State,* 27 Wash. 288, 67 Pac. 583."

The court then quotes as authority from *Billings v. State,*
*supra,* as follows: "It [the state] has not consented, either
expressly or impliedly, to become responsible for the miscon-
duct or negligence of its officers or agents; and, in the absence
of a statute making it liable in damages therefor, no such ac-
tion as the present one can be maintained against the state."

After going more fully into the rule and quoting all of the
leading authorities the court proceeds to make a distinction
which is particularly in point in the case at bar. There, as
here, the complaining party sought to confine a rule of non-
liability for torts to case where the negligence of the officer
or agent occurred in the discharge of some purely govern-
mental function of the state, and further contended that in
leasing the armory the state was engaging in a private enter-
prise and that the rule of nonliability did not apply. The
court, upon this point, says:

"The question is admittedly a new one. No authority dis-
tinctly so holding, nor indeed recognizing such exception, has
been cited and we have found none."

The court, in the Riddoch case, then proceeds to review and
point out the distinction between such a liability upon the
part of a municipal corporation on the one hand and upon
the part of the state on the other, and continuing says:

"On the other hand, the state is inherently sovereign at
all times and in every capacity. It is the organized embodi-
ment of the sovereign power of the whole people. By reason
of this sovereignty, it possesses all powers, but only such
powers as are within the limitations of the state constitution
and without the prohibitions of the Federal constitution. It
can do no act except in the exercise of this sovereign power
and within these constitutional limitations. If it may con-
stitutionally take over any enterprise, though usually of the
nature of a private business, the very taking over is an
exercise of this sovereign power. It seems much more logi-
cal and much more consonant with the idea and genius of
sovereignty that the enterprise thus taken over should be
impressed with the sovereign character of the state than that
the state should become hampered by the private character

of the enterprise. The latter result is incompatible with the concept of sovereignty.''

And again the court says: ''There is no statute whereby this state has assumed a liability for the negligence or misfeasance of its officers or agents, and we find no established principle of law sustaining such a liability in the absence of such statutory assumption. No consideration of hardships to be avoided would justify a court in abrogating established principles of substantive law to create a liability not so assumed. To change substantive law is the province of the legislature, not of the courts. Nor can the argument that it is the tendency of the times for states to take over and administer for the people interests and enterprises heretofore deemed of a private nature alter the case. On the contrary, the state can only do these things in the exercise of its sovereign and constitutional powers; and as part and parcel of these same sovereign powers, it alone can say through its legislature when and how it shall waive its immunity from liability for tort.''

In the case just quoted from, the court affirmed a judgment sustaining a demurrer to the complaint. The case, as before indicated, is particularly in point in the case at bar.

No statute has been called to our attention authorizing a suit of this character or waiving in the slightest degree the immunity of the state from all liability for the careless or negligent acts of its servants, employees and agents. In the absence of such a statute this court is powerless to grant any relief under circumstances such as are presented by the plaintiff's amended complaint. From our investigation of the authorities and the principles involved we are satisfied that the word ''claim'' or ''claims'' as it appears in art. 5, sec. 10, of our constitution does not include any claim for damages caused by the negligent acts of the state's servants, employees or agents. And further, that in the absence of any statute expressly making the state liable in such cases no such liability exists.

The New York cases holding the state liable under such circumstances not only do not weaken, but tend to strengthen

this position, for the reason that the liability in those cases arose by virtue of statutes. This was the situation in *Sayre v. State,* 123 N. Y. 291, 25 N. E. 163; *Waller v. State,* 144 N. Y. 579, 39 N. E. 680. There are a number of other cases from that jurisdiction, but those we have cited will serve to illustrate the principle.

Not only has the legislature in this state failed to provide a statute creating a liability on the part of the state, under circumstances such as are alleged in plaintiff's complaint, but the legislature seems to have intended to forestall any such contention. The last sentence of sec. 109, referred to *supra,* is as follows:

"No claim which is not provided for by law shall be audited or set off."

This clause seems to strengthen the position we have taken.

Upon the authorities cited and for the reasons herein expressed, the demurrer must be sustained and the action dismissed. Costs awarded to defendant.