**HUNKIN–CONKEY CONST. CO. v. PENN-
SYLVANIA TURNPIKE COMMIS-
SION et al.**

No. 439.

District Court, M. D. Pennsylvania.

July 18, 1940.

———◆———

John M. Martin, of Los Angeles, Cal., William J. Fitzgerald, of Scranton, Pa., W. W. Montgomery, Jr., and Edward G. Taulane, Jr., both of Philadelphia, Pa., and Herman J. Galloway, of Washington, D. C., for plaintiff.

John D. Faller, David L. German, Theodore S. Paul, George W. Keitel, Asst. Deputy Atty. Gen., of Pa., and Harry K. Daugherty, Senior Counsel, Department of Highway, all of Harrisburg, Pa., for defendants.

WATSON, District Judge.

This case is before the court for disposition of motions to dismiss the complaint and to drop the names of certain of the parties defendant.

The plaintiff, Hunkin-Conkey Construction Company, an Ohio corporation, brought this action for a declaratory judgment against the Pennsylvania Turnpike Commission and its members. The complaint alleges that the plaintiff and defendants are residents and citizens of different states and that the amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000. It is further alleged that the plaintiff and the defendant, Pennsylvania Turnpike Commission, entered into a contract for the construction of a tunnel which is a part of the highway now being built between Harrisburg and Pittsburgh in this state; that certain changes in the work required under the terms of the contract have been made by agreement between the parties; that a controversy has arisen between the plaintiff and the defendant, Pennsylvania Turnpike Commission, as to the rights of the parties with relation to these changes, in regard to the compensation payable to the plaintiff, the time of payment, the time of performance of the contract, and the setting aside of a fund sufficient to insure payment to the plaintiff.

The Pennsylvania Turnpike Commission, hereinafter called the Commission, moves to dismiss the complaint upon the grounds that this court is without jurisdiction to hear and determine the controversy; and that the complaint fails to state a cause of action upon which relief can be granted. The individuals, members of the Commission, move to have their names dropped as defendants, for the reason that no cause of action is stated against them.

■ The motion of the individual defendants to have their names dropped as defendants in this case is clearly proper. The complaint does not state a cause of action against them either individually or as members of the Commission. The plaintiff does not, and clearly cannot, hold these defendants personally liable for the acts of the Commission. Hopkins v. Clemson College, 221 U.S. 636, 642, 31 S.Ct. 654, 55 L.Ed. 890, 35 L.R.A., N.S., 243, and, procedurally, the act creating the Commission gave it the right to sue and be sued in that name, and thus made it unnecessary to join its members in a suit against it.

The defendants contend that this court does not have jurisdiction of this case because the Commonwealth of Pennsylvania is the real party defendant and the Commission is only its agent, and, therefore, this suit is barred by the Eleventh Amendment to the Constitution of the United States; that, even if not so barred, this court is without jurisdiction because the sole basis of jurisdiction is the alleged diversity of citizenship and such diversity does not exist here.

■ The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This amendment has frequently been before the courts and it is well settled that the im-

munity therein granted may be waived by the State. In this case, the Commission is authorized to sue and be sued. This general provision constitutes a waiver by the State, if the State is the real party in interest, of its immunity from suit. Utah Construction Co. v. State Highway Commission, D.C., 16 F.2d 322; Interstate Construction Co. v. Regents of the University of Idaho, D.C., 199 F. 509; Hertz v. Knudson, 8 Cir., 6 F.2d 812. However, as shall be shown later, it is my conclusion that the State is not the real party defendant.

█ The basis for jurisdiction of this court relied upon by plaintiff, aside from the amount in controversy, is the alleged diversity of citizenship of the parties. If the Commission is not a legal entity distinct from the State, the motion to dismiss must be granted, for "A state is not a citizen. And, under the judiciary acts of the United States it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of different states, and that the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States." Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231; Minnesota v. Northern Securities Co., 194 U.S. 48, 63, 24 S.Ct. 598, 48 L.Ed. 870; State Highway Commission v. Utah Construction Company, 278 U.S. 194, at 200, 49 S.Ct. 104, 73 L.Ed. 262.

The Pennsylvania Turnpike Commission was created by the Pennsylvania Act of Assembly No. 211, May 21, 1937, P.L. 774, 36 P.S.Pa. § 652a et seq. Section 4 of that Act provides: "That there is hereby created a commission to be known as the 'Pennsylvania Turnpike Commission' and by that name the commission may sue and be sued, plead and be impleaded, contract and be contracted with, and have an official seal. The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth. The commission shall consist of five members, and the Secretary of Highways shall be a member ex officio. The four remaining members shall be appointed by the Governor by and with the advice and consent of two-thirds of the members of the Senate, and shall be residents of the Commonwealth of Pennsylvania at the time of their appointment and qualification * * *."

█ This provision, if taken alone, sheds little light upon the question of whether or not the Commission is in fact the alter ego of the State. However, the other provisions of the act, when considered in conjunction with this section, clearly indicate that the Commission is distinct and separate from the State and is in reality a citizen thereof. The act provides that the entire cost of the turnpike shall be paid in the first instance from a fund which is to be raised by the issuance and sale of bonds, and that the "turnpike revenue bonds issued under the provisions of this act shall not be deemed to be a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth, but such bonds shall be payable exclusively from the fund herein provided therefor from tolls", section 2, 36 P.S.Pa. § 652b; that the Commission shall have the power to enter into contracts, take title to property, employ engineers, architects, inspectors, and attorneys and such other employees "as may be necessary in its judgment, and fix their compensation", § 4 (subject to the proviso that all contracts and agreements relating to the construction of the turnpike must be approved by the Department of Highways and the construction shall be under the supervision of the Department of Highways); that, upon completion of the turnpike, the Commission shall fix the amount of the tolls and employ men to collect them and provide for the maintenance of the turnpike; that, upon retirement of the bonds or provision therefor, the Commission shall be dissolved and the turnpike shall become a part of the system of state highways.

From the provisions of the act, as above outlined, it is clear that the Commonwealth of Pennsylvania has so divorced the defendant Commission from the State that this action is one against a legal entity distinct from the State, and the State itself is only indirectly interested in the turnpike.

█ The fact that the Commission is not a corporation does not make it any less a distinct legal entity. It is an unincorporated association, sometimes called a quasi corporation, with power to sue and be sued

in its own name, and as such it assumes the citizenship of its members. Thomas v. Board of Trustees, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160. In the present case, the members of the Commission are alleged to be citizens of the Commonwealth of Pennsylvania and, therefore, this Commission must be deemed to be a citizen of Pennsylvania within the meaning of 28 U.S.C.A. § 41(1).

This case is clearly distinguishable from the case of State Highway Commission v. Utah Construction Company, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262. There, the construction contract was entered into in the name of the State; the Commission did not have any funds of its own but received its funds from the State; the State alone would have been compelled to respond in damages in event of liability to the contractor. The only conclusion possible under such circumstances was that the State was the real party defendant.

In the case of Kansas City Bridge Co. v. Alabama State Bridge Corp., 5 Cir., 59 F. 2d 48, the State again supplied the funds to be used by the Bridge Corporation in the construction of the bridges and, in addition, the officers of the Bridge Corporation were officials of the State who acted without compensation in addition to their official salaries.

State Highway Commission v. Kansas City Bridge Co., 8 Cir., 81 F.2d 689, is also a case in which the State was directly responsible for the liability which the suit was brought to establish, as the Commission had no funds of its own from which the damages could be paid.

The case of State of Missouri v. Homesteaders Life Ass'n, 8 Cir., 90 F.2d 543, reflects, in its facts, a situation more nearly comparable to the case at hand. There the Superintendent of the Insurance Department was given power to act in his own name, and a fund was created through his office to defray all liabilities which he might incur. The State disclaimed any responsibility for payment of expenses of the office. The court held that, in such case, the Superintendent of the Insurance Department was not the State, but was a separate and distinct legal entity, even though the State received a portion of the funds collected by the officer.

The Pennsylvania Turnpike Commission has been given the power to create a fund through the pledging of its own credit to defray all and any expenses which it might incur, and the State has expressly denied its own financial responsibility in the undertaking. Furthermore, the Commission has been given the power to act through its own agents, subject only to supervision by the State in a few matters. In addition, the Pennsylvania State Highway Commission, an agency of the State, existed at the time of the creation of the defendant Commission, and was qualified to carry out the duties of the defendant Commission. The fact that it was not designated to do so lends support to the contention that the Commonwealth of Pennsylvania desired to create an entity distinct and apart from itself for the purpose of constructing the turnpike.

Taking into consideration all of the attributes of the Commission, it is my opinion that this suit has been instituted against a legal entity distinct from the Commonwealth of Pennsylvania and diversity of citizenship is present.

■ As a further reason for the dismissal of the complaint, the defendants contend that the arbitration clause of the contract covers the controversy now before the court and that, as a consequence thereof, this court is without jurisdiction to hear and determine the matter. It is well settled that the federal courts will not give effect to arbitration clauses in building contracts to the extent of refusing to take jurisdiction of the cause where arbitration has not been instituted. Rae v. Luzerne County, D.C., 58 F.2d 829; see also Red Cross Line v. Atlantic Fruit Co., 264 U.S. 109, 121, 44 S.Ct. 274, 68 L.Ed. 582. The State statutes, such as are now in force in Pennsylvania, making arbitration clauses enforceable, are considered to be remedial in nature and not substantive. That is, they give to the parties a new remedy, but do not affect their rights and liabilities. It was said in California Prune & Apricot Growers' Ass'n v. Catz American Co., 9 Cir., 60 F.2d 788, 790, 85 A.L.R. 1117, "The rights of the parties herein, we repeat, grew out of the contract for the purchase and sale of the property described therein, and not out of the agreement to arbitrate. The latter merely substitutes for a court action the remedy and procedure prescribed in the Arbitration Act, for the enforcement of those rights. It substitutes a special tribunal for the court." Therefore, this court cannot enforce the State statute, but must apply the rule followed

in the federal courts. This, as previously shown, does not permit the court to enforce the arbitration agreement, and, by the same token, does not require the court to relinquish its jurisdiction over the cause of action.

The final contention of the defendants is that this is not a proper case for declaratory relief. The plaintiff has alleged that a controversy exists as to whether or not the additional work being performed by the plaintiff and not specified in the original contract is within the general provisions of the contract; whether the payments being made are proper payments; whether the time of completion of the contract is binding upon it. The plaintiff asks that its payment be secured by setting aside a fund for that purpose. Certain of these questions are clearly proper ones for declaratory decree. With regard to the time of completion of the contract, it is obviously of considerable advantage to the contractor to know whether or not he is entitled to an extension of time. This alone might be held to be sufficient. However, the court is not restricted in this action to giving declaratory relief. Rule 54(c), 28 U.S.C.A. following section 723c, provides that "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Therefore, if the plaintiff has mistaken his remedy, but has set forth facts showing that he is entitled to relief of a kind which this court can grant, the fact that he asks for a declaratory judgment is not a bar to the granting of the appropriate decree. Furthermore, a claim for declaratory relief and one for coercive relief may properly be joined in the same action. Chase National Bank of the City of New York v. Citizens Gas Company of Indianapolis et al. (Chase National Bank of the City of New York v. Indianapolis Gas Company), 7 Cir., 113 F.2d 217, decided June 6, 1940.

Now, July 18, 1940, it is ordered that the names of the individual defendants be dropped both in their capacity as members of the Pennsylvania Turnpike Commission and as individuals. The motion to dismiss the complaint is denied, and the Pennsylvania Turnpike Commission is directed to file its answer to the complaint within twenty days from the date it receives notice of this order.